They're jumping from the frying pan into the fire.  Ms. Meyer. Thank you, Your Honors. May it please the Court, my name is Mari Meyer. I represent the appellant, ATA Retail Services, which contends that it should be granted reversal and remand for the following three reasons. First, the district court erred in failing to grant summary judgment. Could you pull that mic a little closer to where you're – there you are. My apologies. Is that better? Yeah. Thank you. First, the district court erred by failing to grant summary judgment because Mr. Carroll could only speculate as to the actions he attributed to his former supervisor, Donna Hart. He didn't have actual facts. He only had conclusory allegations at the summary judgment stage. Ms. Meyer, may I interrupt for a second? Yes. Is that reviewable by this Court, the denial of the summary judgment after a full trial? I'm sorry? Is the denial of a motion for summary judgment reviewable by this Court after a full trial before a jury? Yes, Your Honor, I believe it is. Okay. I believe there's precedent in this circuit that suggests that's not the case. The Lynn case, Acosta case, saying that after a jury trial you can't go back and test the judge's decision at the trial level on the summary judgment. My apologies, Your Honor. I did not look specifically at that issue. The cases that I read appeared to be cases where there had been a trial and there was still a complaint about the summary judgment. But I apologize that I did not look at that specific question. Well, I'm looking at Lynn v. United Parcel Service, decided by this Court in 2001. Quote, we agree with other circuits and hold that this Court will not review the pretrial denial of a motion for summary judgment after a full trial and judgment on the merits. In that case, there's also Acosta, also decided by this Court in 2016. And then Ortiz v. Jordan, United States Supreme Court, 2011. I'll suggest, at least to me, maybe I'm misreading those cases. That's a different rule than the motion to dismiss. We will review a motion to dismiss for failure to state a claim at all. Your Honor, I apologize. But the rule that Judge Huck states is really an efficiency rule. Well, my apologies to the Court. I did not look specifically at that question. And so perhaps I should move on to my other arguments because I'm afraid I do not have a better answer to that question. The second reason that we request reversal, Your Honors, is that the Court, the district court erred by failing to assess sanctions against Mr. Carroll because he spoliated nearly the entire body of documentary evidence and thereby was able to shape his own narrative without the risk of contradiction by documents and prevented ATA from gathering evidence that might have provided a defense because it might have provided evidence about the totality of the circumstances with respect to the sexual harassment, as well as evidence pertaining to the claim of unpaid wages. The third reason for reversal, Your Honors, is that the district court erred by admitting into evidence individual pages from compilations of e-mails that were never properly authenticated and could never be authenticated because of the spoliation. And also the e-mails were unduly prejudicial and of little probative value because they post-dated the alleged harassment and created a risk that the jury would punish ATA for the abusive e-mails that post-dated the employment situation rather than for conduct that occurred during the employment. Turning to the second argument, which is the one about the lack of sanctions for spoliation, the district court, as I read the relevant parts of the record, found that there was no bad faith on Carroll's part, that there were no alterations of e-mails, that ATA had either the original e-mails or access to them from Hart's account, and that Carroll had given his phone to ATA or at least made it available during the EEOC proceedings. Did I get those things right? At least what the district court said. I agree that those were points that the district court focused on. I do not agree that those Tell me where you think the district court fell short. All right. With respect to the alterations of the e-mails, I think that the district court may not have appreciated the point that we were trying to make at that hearing, which is that Mr. Carroll, on the day he went to the EEOC, he printed two compilations of e-mails. By his own testimony, those two compilations were, one was 69 pages and one was 14 pages, and we know this because he described having printed these e-mails at his own home from his own printer, and we know when we look at the exhibits that I presented at that hearing, the page numbers and the date stamp on the bottom of each of those pages shows June 20, 2013, page 1 of 69, page 2 of 69, et cetera. And the other compilation, it's page 1 of 14, page 2 of 14, et cetera, except that not all of the pages are in existence from the two compilations. We have 28 pages remaining from those two compilations. 69 pages plus 14 pages, there should have been 83 pages in those compilations. Only 28 pages remain in existence. The other 55 pages are unaccounted for. They were apparently printed by Mr. Carroll, and then he removed them from the compilations before he went to the EEOC, and he only took 28 pages to the EEOC that day after he printed all 83 pages. But the district judge agreed with all that. He agreed that there was spoilation. But he said it was done after hearing your client's explanation or the plaintiff's explanation said it wasn't done in bad faith, and isn't bad faith a requirement in order to give the kind of remedies that you were seeking? We agree that bad faith is required. Okay. So shouldn't the focus then be on whether the judge views his discretion in finding no bad faith, not that there was a lack of spoilization? Well, we agreed that that should be the focus, and we believe that she did abuse her discretion in finding no bad faith because, in addition to that alteration, which Mr. Carroll has never explained, in other words, throwing out 55 pages, he also deleted the electronic record of all of those e-mails. He then hid that fact by first saying that he would produce the electronic versions of the e-mails during discovery so that we could look at the metadata, and then later saying, oops, we don't have those. And then when the pages from the compilations were actually produced, they were produced out of order so that it actually took a lot of careful review to figure out that pages were missing from those compilations. And all that you've established in the record, but hearing all that and the plaintiff's explanation, he found there was no bad faith. And is that determination, is that an abuse of discretion? Yes, Your Honor. We do believe it is because, in addition to the e-mails, we also have the problem that he got rid of the phone, his story as to what happened to the phone. But he explained that, and the judge apparently accepted that explanation, whether I would or someone else would is beside the point. The judge accepted that explanation. The judge did accept that explanation, but when we have three different categories of electronic record that have all vanished at the hands of the plaintiff at a time when we didn't, when ATA didn't even know that he was going to make a claim, then it's hard to accept bad, that bad faith is not the explanation when, if it happens once, it's naivety. When it happens three different times and there's a cover-up. It sounds like that might be a good argument for the jury. But the problem I'm having is saying this judge did not act in good faith or violated her own requirements with regard to her discretion in hearing all the evidence. And you're asking us to replace, with our opinion, her opinion with regard to bad faith. Yes, Your Honor. I understand that. I think that she simply gave Mr. Carroll more of the benefit of the doubt than was mandated by the evidence, by the fact that there were the three different three separate incidents. The fact that there was the cover-up. Those were things that the court paid attention to, for example, in oil equipment company versus modern welding. Those are, and in Fleury, those are things that I think that the district court simply did not, did not fully focus on. The timing of the spoliation. The fact that the electronic record was also deleted in addition to the paper copies being removed from the compilations. So that those missing 55 pages from the compilations couldn't be recovered electronically. They're completely gone. It's the multiple events of spoliation that support the finding of bad faith. And I think the district court simply did not notice or pay attention to the multiple different events of spoliation that warranted that determination. I know I'm almost out of time. Just as to the evidentiary errors, there was no authentication. We had asserted that issue in our motion in Liminey. The authentication simply did not happen. And then the evidence that the e-mails that we complained about were admitted into evidence that were from a different time frame, the later time frame after the employment relationship ended, purely because Mr. Carroll's own spoliation meant that he didn't have any contemporaneous electronic record. And so the jury saw the later record, not the contemporaneous record. Thank you. Holden. Good morning, Your Honors. May it please the court. My name is Regina Molden, and I represent Reginald Carroll. We would ask that this court affirm the district court decisions with respect to the spoliation issue that counsel just raised and also with respect to the admission of certain evidence into trial, namely the e-mails at issue. I want to speak to a couple of points that counsel made with respect to spoliation. Can I shift it for a minute? The e-mails. What was the evidentiary basis for admitting those e-mails? Mr. Carroll is required, as this court knows, to show that his belief that he was being sexually harassed was both subjectively and objectively reasonable. So Mr. Carroll, from his position, he's sitting there on the stand, and his supervisor never made an appearance at all, not during summary judgment, not during the trial. So you have this man who is saying, this is what happened. It's pretty unusual for a man. I understand that. But what is the specific rule of evidence or the principle of evidence that allows matters that are admittedly after Mr. Carroll was no longer employed by the defendant to put those into evidence? You're asking a question with respect to the e-mails after Mr. Carroll left? Those are the only ones that had any sexuality. Correct, Your Honor. Okay, so those are the ones that you focused on in the trial, correct? Correct, Your Honor. So what is the legal or the evidentiary basis for putting those before the jury? Again, to show, number one, that she sent them. It also spoke to what happened before he was fired. That sounds like you're trying to prove something that was said during the time of employment by something she said after. So what is the legal basis for that? To show that his belief was both subjectively and objectively reasonable, which he's required to do under Title VII under a sexual harassment case. Additionally, Your Honor, to show that the ---- I don't understand that. I apologize. I don't understand that at all. One element of his claim. No, I understand what you have to prove. But how do post-employment e-mails of a sexual nature prove anything that's probative with regard to what he did during his employment? Again, those e-mails, Mr. Carroll's testimony was that she said similar things while he was working there and that this just continued even after he left. Ms. Hart attempted, she was so obsessed with Reginald Carroll that she worked his shift for him. We only saw that through the e-mails, that she continued to work his routes for him for approximately two weeks, that she put in his time for him. That's the evidence. But what's the legal argument? It seems to me the argument was thrown out that it was state of mind. I don't see how that applies. And that was the rationale that at least the trial judge and maybe the trial lawyer for Mr. Carroll argued. But that was the only thing that was put out there. I don't see how that applies. Was Hart still employed when she sent the e-mails? Hart was still employed there and Hart was attempting. Why aren't they admissions? I'm sorry, Your Honor. Why aren't they admissions? Why aren't they admitted? Of a party. She's speaking for the company. Yes, she is. She's speaking for the company and she's asking him to have sex with her, come back to the company. So it's continuing. I mean, if he hadn't been working for the company yet and she's saying, you know, you get all these sexual favors if you accept this job, it's the same thing afterwards. He's gone. The company doesn't know he's gone yet because she is putting in time for him and pretending that he still works there while she's buying time to get him  So are you saying it's admission against interest by the defendant? Absolutely, Your Honor. It wasn't argued before the court. That's the first time that ever came up was just now. But if it's admission against interest, it has to be within the scope of the employee's employment, correct? Correct, Your Honor. How is that in the scope of the employee's, Ms. Hart's, employment? We raised a number of issues. There was a motion in limine filed right, I think, during the pretrial hearing, and we raised a number of reasons why those emails were admissible. So, sure, Your Honor. Tell me what they are then. I frankly don't see a single legal evidentiary basis for allowing an employee with her own firm personal lark to send emails after the employee's left to be relevant to the treatment of that employee while he was employed. It established that, number one, one of the major arguments at trial was that Donna Hart didn't have access to his time sheets. Donna Hart could not have manipulated his time. Throughout those emails, she talks about how, I'm working for you, hoping that you'll come back, and I'm putting in time for you, which goes directly to the notion that she had access to his email.  Correct, Your Honor. And I understand the relevance to that. Yes, and that was in the emails. But there's such a thing as redacting, and what you argued in your closing argument, which was all about these emails, basically. I read the closing argument. Yes. It was almost exclusively about these emails, and only one very small statement about wages. So why shouldn't they have been redacted to take out what was really the offensive part of those emails, which was the sexual discussion? Some of the emails were redacted, and I don't recall specifically which emails were redacted, but there was some redaction of emails. But not the part that you argued in your closing argument. It was the crux of your case, and would obviously result in a very large punitive damage award. Your Honor, I don't – if Mr. Carroll is required to show subjective reasonableness, and the reasonableness is reflected in those emails, then I don't understand why that is not a basis for admitting those emails. I'm getting back to my first question. What is the evidentiary basis? Judge Schoflat suggests it might be admission against the party. No, just the punitive areas. But then there are certain requirements for that. Okay. Okay, go ahead. Maybe the way to flip the question around. Judge Huck is not asking you, I don't think, why you wanted the information in. I understand. He's asking you the legal basis for admissibility. So the defense raised, number one, they raised a couple of objections. Yes. They raised authentication as one. Yes. Okay, so let's start with that. Yes. Why were those post-termination emails, at least post-termination of Mr. Carroll, why were those properly authenticated? Mr. Carroll properly, authentication requires the witness to show that the document or the evidence is what it purports to be. Right. Mr. Carroll was able to say he was a recipient of all of those emails. He was able to identify his email address. He testified to that. He was able to identify Ms. Carroll's email address. He testified to that. There was back and forth. Sometimes she would send him an email, and then he would reply right away. She corresponded with him in a certain way that he was familiar with, and we went through this with respect to each email, and the judge was satisfied that Mr. Carroll was testifying about emails that were, in fact, what they purported to be. Okay. Did ATA raise a hearsay objection to those emails? They did. They did. I think that they did raise hearsay objections. Okay, so tell me why the hearsay objection was not properly taken. Because we were not offering those emails for the truth of the matter asserted therein. Those emails were offered, again, as I was saying, it's very clear that Mr. Carroll had to establish both subjective and objective reasonableness with respect to his belief that he was being sexually harassed by his supervisor. We offered those emails to show his belief was both subjectively and objectively reasonable. Well, he had been cross-examined about his subjective belief all along, had he not? I mean, that was an issue. Was it not the case that the defense was that the company was taking a position antagonistic to his subjective belief as well as objective? They were. In fact, they said throughout that we just don't find him to be credible. Throughout the trial, in opening argument, afterwards, we just don't find Mr. Carroll to be credible, which is why the case did not resolve before going to trial. And so Mr. Carroll offered those emails to show this is what I was dealing with and to show the frequency that this was happening. When he worked there, she was able to reach out and grope him whenever she felt like doing so. She was able to say whatever she wanted to say to him because he was right there. When he left, the only way she could get to him to continue her harassment was through email and through text messages and through telephone calls, and so she continued. Well, during his employment, Mr. Carroll never received an email from Ms. Hart suggesting any sexual activity, correct? Correct, because she was right there. It was only after employment. Correct, because she was there. Assuming there was an error to admit those emails, the post-employment emails, would it have been, in your view, prejudicial? Absolutely not. Your Honor, Mr. Carroll testified at length with respect to what he went through, but more importantly, Donna Hart was not there to deny it. We believe the jury would have come to the exact same conclusion. When counsel stood up during her opening argument and said, unfortunately, she's not going to be here. So we only had Mr. Carroll's testimony and evidence. They would have come to the exact same conclusion. Well, but I go back to your closing argument. Your closing argument was almost exclusively about those emails, the post-employment emails. Time and time again, you went back to those. Yes, because we It seems to me that was so important to you that you spent most of your argument to the jury on those. Yes. It could be suggested that that might have confused the jury, that these emails were important to you and to Mr. Carroll because they were a continuation of the sexual harassment he suffered while he was an employee. Those emails were important to me and worth emphasizing during closing argument because counsel decided that they would hide Ms. Hart and offer their position in place of it. What they said at trial was, we haven't heard from Donna Hart, therefore it makes it okay. My argument was, we've heard from Donna Hart. We heard from Donna Hart loud and clear. And the only way that I could convey to them what Donna Hart had to say in response to their argument that we've not heard from Donna Hart is through her emails. That's not true. You had your client's testimony. It was unrefuted. You didn't need those emails. He came in and testified. She said all these things. Not any emails, but she said these things. And that was not refuted in any way. That was, and I understand that's what you're saying. That's not what counsel said at trial. Counsel said, we don't find him credible. Donna Hart is not here. And my argument is, she is here. She has made an appearance at this trial. This is what he was dealing with. And so our argument was, you know, she offered nothing else to show he's not credible. There was one theory thrown out about them perhaps being in a conspiracy together. There's this argument about spoliation, the emails from some emails being missing. No emails. There was nothing. This is speculation. We don't know. The only testimony we have about the emails is Mr. Carroll's testimony, that those emails that we actually had at trial were the same as the conversations, the verbal conversations or statements that she made to him, Donna Hart made to him, while he worked there. And so this, you know, them coming up and saying, oh, she's not here, and just— I understand all that. Very persuasive. But going back to my first question, you have to have a legal evidentiary basis for admitting evidence. It has to be relevant. There has to be some basis in the rules of evidence. Yes. Relevant to his— And the only one that was—I think the one we discussed was the state of mind, and that clearly doesn't apply. Relevant—Your Honor, we would argue that it is relevant. The emails were relevant to his state of mind. He is required to show that the harassment was both objectively and subjectively reasonable. I'll throw you a bone. It corroborated his testimony. It did, Your Honor. I mean, he had a—I speak for myself. He had a version of what had happened. Yes, Your Honor. And that was at issue. Yes, Your Honor. And these things corroborated his testimony. His testimony was being impeached. Yes, Your Honor. Yes. And that is absolutely correct, Your Honor. It corroborated his testimony. And, again, I go back to relevance. Relevance is important because it was relevant to his state of mind. But his credibility was relevant. His credibility was relevant. They said he wasn't credible. They just didn't find him credible. That was the argument from day one. And so the notion that the lower court decision should be reversed because of spoliation, when Mr. Carroll appeared at the EEOC without counsel, counsel for ATA was right there. He handed over the e-mails to her. He had his phone with him. No one told him, don't trade in your phone because, you know, two years later, no one told him that. He had no idea. And then, even more important, the e-mails that were not turned over, the e-mails that were lost with the phone, the text messages, just said more of the same. There's absolutely no evidence whatsoever to suggest that Mr. Carroll acted in bad faith. We had a full day's hearing where Judge Ross got to analyze him, to ask questions. And so you had Judge Ross giving a hearing. You had the jury giving a hearing. And everybody came out the same way. And so we would respectfully ask this court to uphold the decisions of the district court judge. Thank you. Mr. Meyer. Thank you. To respond to the last thing that Ms. Molden said about the missing e-mails, the e-mails that Mr. Carroll took with him to the EEOC and handed over at the EEOC meeting, EEOC conference, were the 28 pages remaining out of the original 83 that he printed the day that he went to the EEOC. He still has never explained how he printed 83 pages and 55 of them vanished before he got to the EEOC that day. And this was before ATA even knew that he was going to make a claim. What was the record evidence about the phone being available to ATA at some point during the proceedings? Your Honor, during his deposition, his testimony was that he did not have the phone, that he lost it before he ever went to the EEOC. He later changed his story at the exfoliation hearing and also at trial and said, yes, he did have it at the EEOC. I can tell you, Your Honors, I didn't testify at trial, so this is not in the record, but I can tell you that I was not offered any access to anything on a phone at the EEOC conference. There was a question about hearsay. We did raise a hearsay objection as part of our motions in limine. The evidence in the record is from Stephanie Doty, who was Ms. Hart's supervisor, her testimony at the trial. But what's the hearsay objection? I'm sorry? What's the hearsay objection? What is the truth of the matter asserted? It's whatever the content of the email is. Pick one of them and tell me what the truth of the matter asserted is. Well, for some of these, she appears to me making representations as to things she is doing. To the extent that she is doing that, then there would be a hearsay objection. And she was not – there is no evidence in the record that she was still employed by ATA after early May 2013 when her emails started being sent from her personal email and not from her ATA email. So there's nothing in the record that suggests after early May that she's still with ATA. So to the extent that she is making representations in the emails about things she said or done, there would not be a hearsay exception applicable if she's not a company representative. There is no – as for authentication, there was no representation that – by Mr. Carroll that he – that each of the emails on each page of each exhibit was a true and accurate representation of what had been – what he had received. And some of these – some of these exhibits actually have just partial emails that can never be authenticated because they're not complete. Finally, Your Honors, as to the spoliation, we do believe that the court – that the district court erred in an abuse for discretion in not applying the correct standard to determine there was bad faith. And then with respect to the evidentiary errors, they impacted over three-fifths of the documentary evidence, 15 out of 26 exhibits, over 50 percent of Mr. Carroll's trial testimony, all of the – almost all of the closing argument. And there was no instruction to the jury putting the evidentiary errors or these emails in the context that they could only corroborate, not prove. And there was a risk – serious risk of jury confusion on that front. Thank you very much. We'll move to the last case.